**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**BRANDON LEBOEUF (#441722)**               **CIVIL ACTION**

**VERSUS**                                  **NO. 21-329-BAJ-RLB**

**TIMOTHY HOOPER, et al.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT**

Signed in Baton Rouge, Louisiana, on February 23, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRANDON LEBOEUF (#441722)  CIVIL ACTION

VERSUS  NO. 21-329-BAJ-RLB

TIMOTHY HOOPER, et al.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on a Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254 by Brandon LeBoeuf ("Petitioner"). The State has filed an opposition to the Petitioner's application.[1] There is no need for oral argument or for an evidentiary hearing.

On June 4, 2021, Petitioner, an inmate confined at the Louisiana State Penitentiary, filed this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, attacking his 2005 conviction and sentence on one count of second-degree murder in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.[2] Petitioner asserts the following three grounds for relief: (1) denial of due process and ineffective assistance of counsel at trial because his trial attorney failed to investigate his mental health history, which indicated that he was incompetent to stand trial; (2) a violation of *Napue v. Illinois*, when the lead homicide detective presented false and/or perjured testimony at trial; and (3) failure by the State to disclose a law enforcement report containing exculpatory evidence, in violation of the holding in *Brady v. Maryland*.[3] However, as set forth below, because Petitioner's application is untimely and procedurally barred, the Court need not reach the merits of his arguments.

---

[1] R. Docs. 4, 5.
[2] R. Doc. 1, p. 1.
[3] *Id.*, pp. 7-14.

I.  **Procedural History**

On October 18, 2005, after a bench trial, Petitioner was found guilty of one count of second-degree murder and was sentenced to life imprisonment without the benefit of parole, probation, or suspension of sentence.[4] Petitioner sought a direct appeal with the First Circuit Court of Appeal ("First Circuit"), which affirmed his conviction and sentence on September 15, 2006.[5] The Louisiana Supreme Court subsequently denied writs of supervisory review on August 15, 2007.[6]

On August 13, 2008 Petitioner filed a counseled application for post-conviction relief ("PCR") with the Nineteenth Judicial District Court.[7] The trial court denied Petitioner's application on September 13, 2012.[8] Petitioner did not seek writs of supervisory review of this decision. Petitioner then filed a second counseled PCR application on September 11, 2017.[9] The Nineteenth Judicial District Court denied Petitioner's second application on December 16, 2019.[10] Petitioner then sought supervisory writs with the First Circuit, which writs were denied on May 26, 2020.[11] The Supreme Court similarly denied writs on June 1, 2021, stating, specifically, that "[t]he application was not timely filed in the district court, and applicant fails to carry his burden to show that an exception applies."[12] This Petition followed.

II.  **Timeliness**

28 U.S.C. § 2244(d) establishes a one-year statute of limitations for federal habeas corpus claims brought by prisoners in state custody. This limitations period begins to run on the date

---

[4] R. Doc. 6-1, pp. 45-179.
[5] R. Doc. 6-3, pp. 104-118.
[6] *Id.*, p. 103; R. Doc. 7-1. pp. 2-16.
[7] R. Doc. 6-6, pp. 84-108-136.
[8] *Id.*, p. 92.
[9] R. Doc. 6-8, pp. 95-106.
[10] *Id.*, pp. 39, 41-51.
[11] R. Doc. 1-11, pp. 26-52; R. Doc. 7-1, p. 53.
[12] R. Doc. 7-10, p. 155; *see also* R. Doc. 7-10, p. 154; R. Doc. 7-1, pp. 27-51.

that the judgment becomes final through the conclusion of direct review or through the expiration of time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). As provided by the referenced statute, the time during which a properly filed application for state post-conviction or other collateral review is pending before the state courts with respect to the pertinent judgment or claim shall not be counted toward any part of the one-year limitations period. 28 U.S.C. § 2244(d)(2). However, the time during which there are no properly filed post-conviction or other collateral review proceedings pending does count toward calculation of the one-year period. To be considered "properly filed" for purposes of § 2244(d)(2), an application's delivery and acceptance must be in compliance with the applicable laws and rules governing filings. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), citing *Artuz v. Bennett*, 531 U.S. 4, 8, 11 (2000). Further, a properly-filed state application is considered to be "pending" both while it is before a state court for review and also during the interval after a state court's disposition while the petitioner is procedurally authorized under state law to proceed to the next level of state court consideration. *See Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

Here, Petitioner sought a direct appeal of his conviction and sentence to the First Circuit and, following the First Circuit's affirmation of same, to the Louisiana Supreme Court.[13] The Supreme Court denied writs on August 15, 2007.[14] Petitioner's conviction became final on November 13, 2007, 90 days after the Supreme Court's order.[15] **274** untolled days passed until Petitioner filed his first PCR application with the Nineteenth Judicial District Court on August 13, 2008.[16] The Nineteenth Judicial District Court denied Petitioner's PCR application on

---

[13] R. Doc. 6-3, pp. 104-118; 103.
[14] *Id.*, p. 103; R. Doc. 7-1. pp. 2-16.
[15] *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003) (a conviction becomes final upon expiration of the time for seeking direct review, which "includes the ninety days allowed for a petition to the Supreme Court following the entry of judgment by the state court of last resort.").
[16] R. Doc. 6-6, pp. 108-136.

3

September 13, 2012, after which, Petitioner sought an extension of time of the original return date of November 2, 2012 to seek supervisory review.[17]

It is unclear from the record, however, when Petitioner's application for supervisory writs was due. In a motion seeking an extension of the return date, Petitioner requests a two-week extension of the November 2, 2012 deadline.[18] The record reflects that the motion was granted, but no specific new deadline is provided in the signed order.[19] In a later filed motion, Petitioner's counsel filed a Second Request for Extension of Return Date, seeking a one week extension, asserting that the applicable due date was December 2, 2012. R. Doc. 6-6, pp. 51-52.[20] The State, in its Opposition, asserts that Petitioner's "initial state collateral review concluded on December 2, 2012, when, after being granted an extension of the return date to seek writs with the First Circuit, [P]etitioner failed to file writs with that court to contest the trial court's denial."[21] The Court will interpret this in the light most favorable to Petitioner and apply the December 2, 2012 deadline (as opposed to the requested two-week deadline), meaning review of Petitioner's initial PCR application concluded on December 2, 2012, when Petitioner failed to file for writs of supervisory review.

On September 11, 2017, **1,744** untolled days after the conclusion of the review of Petitioner's initial PCR application, Petitioner filed a second PCR application in the Nineteenth Judicial District Court.[22] Petitioner's second PCR application was denied on December 16, 2019, after which Petitioner sought supervisory review by both the First Circuit and the Louisiana

---

[17] *Id.*, p. 92; R. Doc. 6-7, p. 123-125.
[18] R. Doc. 6-7, p. 125 ¶ 6.
[19] *Id.*, p. 126.
[20] There is nothing in the record to indicate that this second extension was granted or that anything was filed by the original or extended deadline.
[21] R. Doc. 5, p. 8.
[22] R. Doc. 6-8, pp. 95-106.

4

Supreme Court.[23] The Louisiana Supreme Court denied writs on June 1, 2021, specifically finding that Petitioner's PCR application was not timely filed in the district court.[24] An additional **three** untolled days passed between this decision and Petitioner's filing of the instant petition on June 4, 2021. As such, a total of **2,021** untolled days, or more than five and a half years, elapsed during which Petitioner did not have any properly filed applications for post-conviction or other collateral review pending before the state courts. Petitioner's application is untimely.

Having found Petitioner's application to be untimely, this Court must dismiss same pursuant to 28 U.S.C. § 2244(d) unless Petitioner can establish either that he is entitled to statutory tolling of the limitations period under § 2244(d)(1)(B)—because there was a state-created impediment to timely filing—or that he is entitled to equitable tolling. Petitioner claims he is entitled to both.

    A.    **Equitable Tolling**

In his Petition, Petitioner argues that he is entitled to equitable tolling with regard to his first claim for relief, *i.e.*, that he was denied due process and effective assistance of counsel when his trial attorney failed to investigate his mental health history and status during trial.[25] Per Petitioner, "[h]is well-documented mental health illness, which has continued into his incarceration, is his extra-ordinary circumstance which justifies allowing this filing."[26]

The one-year federal limitations period is subject to equitable tolling only "in rare and exceptional circumstances." *See U.S. v. Patterson,* 211 F.3d 927, 928 (5th Cir. 2000). The doctrine of equitable tolling "applies principally where the plaintiff is actively misled by the

---

[23] R. Doc. 7-1, p. 53; R. Doc. 7-10, pp. 154-155.
[24] R. Doc. 7-1, pp. 154-155.
[25] R. Doc. 1, p. 7; R. Doc. 1-1, p. 11.
[26] R. Doc. 1-1, p. 13.

5

defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Rashidi v. Am. President Lines,* 96 F.3d 124, 128 (5th Cir. 1996). "A petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *In re Wilson,* 442 F.3d 872, 875 (5th Cir. 2006). The burden is on Petitioner to demonstrate equitable tolling should apply. *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000).

Courts have recognized the possibility that mental illness could equitably toll AEDPA's statute of limitations. *Smith v. Kelly*, 301 F.App'x 375, 377 (5th Cir. 2008), citing *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999). "However, although 'mental illness *may* toll AEDPA's statute of limitations, it does not do so as a matter of right.'" *Lindsey v. Vannoy*, No. 19-12281, 2021 WL 1986395, at *4 (E.D. La. Apr. 29, 2021), citing *Smith*, 301 F.App'x at 378. "Rather, in order for a petitioner's mental illness to warrant equitable tolling, he '(i) must make a threshold showing of incompetence and (ii) must show that this incompetence affected his ability to file a timely habeas petition[].'" *Id.*, quoting *Jones v. Stephens*, 541 F.App'x 499, 505 (5th Cir. 2013). Thus, to establish that the effects of his mental illness, including his medication, entitle him to equitable tolling, "'a petitioner must show that the circumstances prevented him from seeking federal *habeas corpus* relief in a timely manner.'" *Id.*, quoting *Noble v. Cooper*, No. 11-2866, 2012 WL 1135857, at *1 (E.D. La. Apr. 4, 2012) (internal modification omitted).

"Courts in the Fifth Circuit have held that mental illness only justifies equitable tolling where the purported mental illness renders the petitioner *unable* to pursue his legal rights during the Limitations Period, not merely making the pursuit of such rights more difficult." *Winstead v. Davis*, No. 16-0016, 2019 WL 3240680, at *8 (S.D. Tex. May 3, 2019). "[I]f a petitioner was capable of filing pleadings seeking post-conviction relief in the state courts despite his mental

6

illness, that fact obviously undercuts any suggestion that he was incapable of similarly seeking habeas corpus relief in federal court." *Lindsey*, 2021 WL 1986395, at *4, citing *Noble*, 2012 WL 1135857, at *1. Additionally, "[a]lthough the fact of representation is not dispositive, courts that extend equitable tolling based on competency emphasize the petitioner's pro se status." *Winstead*, 2019 WL 3240680, at *8, citing *Fisher*, 174 F.3d at 715.

The circumstances of this case are not "extraordinary" such that equitable tolling can be applied. Petitioner, here, has not demonstrated that particular circumstances prevented him from seeking federal habeas relief in a timely manner. In his Petition, Petitioner notes that "[u]pon entering custody, he was maintained on Lithium and eventually prescribed the anti-psychotic Risperdol beginning in 2007."[27] Petitioner, however, provides no further information about these medications and does not assert that they prohibited him from being able to timely file his habeas application. In fact, around this same time, in August 2008, Petitioner did timely file his first application for PCR relief in state court, belying any implication that said medications were an impediment to him obtaining federal habeas relief.

Additionally, Petitioner notes that in March 2012, he attempted suicide, "largely as a result of serious paranoia," after which he was transferred to Elayn Hunt Correctional Center for mental health treatment.[28] Petitioner later went on a hunger strike in August of 2012 for the purpose of arranging "a meeting with the FBI to discuss 'neurotoxins' placed in his body at Angola."[29] It appears that Petitioner was forcibly medicated in September 2012.[30] As stated above, the state court's denial of Petitioner's first PCR application did not become final until December 2, 2012, over two months later, and in the months prior, counsel for Petitioner was

---

[27] R. Doc. 1-1, p. 14.
[28] *Id.*
[29] *Id.*; R. Doc. 1-11, p. 18.
[30] R. Doc. 1-11, p. 22.

7

actively seeking extensions of the return date for filing for supervisory writs. In addition, Petitioner, at this point, still had over 90 untolled days during which he could have timely filed a federal habeas petition. He did not. Rather, he waited approximately 1,744 days before filing a second PCR application in state court. Petitioner does not explain the reason for this delay, stating only that he "has exhibited active symptoms (i.e. hallucinations) as recently as 2016, and once again prescribed Risperdol in response."[31] However, that same medical record to which Petitioner cites specifically states that Petitioner "remains on no medications" and is "[n]ot bothered by intermittent hallucinations."[32] Petitioner provided no more recent medical records. Further, Petitioner does not provide any medical records for the period between September 2012 and August 2015, and then only the one record from August 2015—which appears to reflect that Petitioner has no complaints and said he was "comfortable"—and the aforementioned 2016 record.[33] Thus, the medical records from the limitations period do not indicate Petitioner was unable to file a timely motion for habeas relief.

Approximately 1,744 days (almost five years) passed between the time the denial of Petitioner's initial, timely-filed PCR application became final and the filing of Petitioner's second, untimely PCR application in the state trial court.[34] Keeping in mind that Petitioner was counseled during his direct appeal to the First Circuit, both of his PCR applications in state court, and his federal habeas petition, and taking into consideration Petitioner's claims of mental illness, the Court finds Petitioner has not set forth circumstances that prevented him from seeking federal habeas relief in a timely manner. Accordingly, the petitioner's application should

---

[31] R. Doc. 1-1, p. 14.
[32] R. Doc. 1-11, p. 24.
[33] *Id.*, pp. 23-25.
[34] *See* R. Doc. 7-10, p. 155 ("Denied. The application was not timely filed in the district court, and applicant fails to carry his burden to show that an exception applies.").

be denied as untimely. *See Lindsey*, 2021 WL 1986395, at *4 (finding that petitioner did not establish that his mental illness constituted an "extraordinary circumstance" to entitle him to equitable tolling where he sought PCR through all three levels of the state court system on two separate occasions, with the first PCR application being filed before his federal limitations period expired; "[i]f his mental illness did not prevent him from seeking relief in the state courts during that time, then any suggestion that it prevented him from similarly seeking relief in federal court is simply too speculative to succeed."); *Winstead*, 2019 WL 3240680, at *8 (finding petitioner not entitled to equitable tolling for his untimely habeas petition where he "was plainly able to pursue his legal rights throughout the Limitations Period," thereby failing to show his alleged mental incompetence rendered him unable to timely file).

### B. Statutory Tolling

Turning now to Petitioner's second and third claims for relief—a *Napue* violation and a *Brady* violation, respectively—Petitioner argues that he timely filed for relief after discovering new evidence via Public Records Act requests.[35] On July 22, 2016, Plaintiff's counsel submitted a request to the Records Custodian of the Baton Rouge Police Department ("BRPD") asking, pursuant to the Public Records Act, "to inspect all documents and tangible items" related to the murder investigation that ultimately led to Petitioner's conviction.[36] BRPD responded on September 20, 2016 that the documents requested were ready to be picked up.[37] Among those documents were two law enforcement reports that Petitioner argues form the basis for his *Napue* and *Brady* claims.[38]

---

[35] R. Doc. 1, pp. 9-14, 16.
[36] R. Doc. 1-5, pp. 1-2.
[37] *Id.*, p. 3.
[38] R. Doc. 1, pp. 10-11, 12.

9

Petitioner seeks relief pursuant to 28 U.S.C. § 2244(d)(1)(D). "Section 2244(d)(1)(D) requires a habeas petitioner to file a claim within one year of the time in which new evidence 'could have been discovered through the exercise of due diligence.'" *McQuiggin v. Perkins*, 569 U.S. 383, 398-99 (2013). "The 'test of due diligence under section 2244(d)(1)(D) is objective, not subjective.'" *Matthews v. Louisiana*, No. 18-589, 2021 WL 4484991, at *3 (M.D. La. Aug. 18, 2021), *report and recommendation adopted sub nom.*, 2021 WL 4480990 (M.D. La. Sep. 29, 2021), quoting *Starns v. Andrews*, 524 F.3d 612, 618 (5th Cir. 2008). "Petitioner must show why he was unable to discover the factual predicate at an earlier date." *Id.*, citing *Boone v. Davis*, No. 18-009, 2019 WL 10599642, at *3 (N.D. Tex. Jan. 28, 2019). "Merely alleging that he did not know the facts underlying his claim(s) is insufficient." *Id.*, citing *Boone*, 2019 WL 10599642, at *3. "The due diligence standard 'requires the petitioner to exercise the consideration expected of a reasonably prudent person under similar circumstances.'" *Id.*, quoting *Webster v. Travis*, No. 07-4236, 2009 WL 3052674, at *1 (E.D. La. Sep. 17, 2009). To be clear, "[t]his subsection does not delay the commencement of the limitations period until the date on which the factual predicate of a claim was in fact discovered or developed; rather, it delays it only until the date on which it 'could have been discovered through the exercise of due diligence.'" *Watts v. Cain*, No. 12-1039, 2013 WL 2422777, at *8 (E.D. La. Jun. 3, 2013), quoting 28 U.S.C. § 2244(d)(1)(D). "And courts have, as with the equitable tolling doctrine, put the burden on the petitioner to show his petition is timely under Section 2244(d)(1)(D) by demonstrating the date that the factual predicate of the claim could have been discovered through the exercise of due diligence." *Warren v. Director, TDCJ-CID*, No. 21-787, 2022 WL 10187499, at *4 (N.D. Tex. Sep. 20, 2022), *report and recommendation adopted*, 2022 WL 10198690 (N.D. Tex. Oct. 17, 2022).

Here, Petitioner, who was convicted in 2005, and who was counseled during his direct appeal to the First Circuit and both PCR requests, does not explain why he waited over a decade—until July 2016—to file a Public Records request to confirm all law enforcement reports had been received. Rather, he argues that "[w]hen examining the diligence requirement, it is only appropriate to consider it in the context that the State had affirmative duties under *Napue* and *Brady* to disclose Supplements 11 and 12" and that "[P]etitioner should not have been forced to file Public Records Act requests in order to obtain them."[39] Per Petitioner, he timely filed his instant habeas petition "within the parameters of § 2244."[40]

The Court finds Petitioner has not acted with the requisite due diligence for relief pursuant to § 2244(d)(1)(D). Nothing in the record indicates why this evidence could not have been obtained years earlier, and Petitioner has not explained this delay. Moreover, Petitioner has failed to specify or even generally allege the date that the factual predicate of the claim could have been discovered through the exercise of due diligence. This is not sufficient. *See Warren*, 2022 WL 10187499, at *4 ("Failing to allege when the factual predicate could have been discovered is especially important here because it prevents the Court from determining that [petitioner's] claims would be timely even if Section 2244(d)(1)(D) applied."). As such, the Court finds Petitioner's habeas petition untimely under 28 U.S.C. § 2244(d)(1)(D). *See Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998) ("Section 2244(d)(1)(D) does not convey a statutory right to an extended delay, in this case more than seven years, while a habeas petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim."); *Windsor v. Prince*, No. 10-202, 2010 WL 5055831, at *4 (E.D. La. Oct. 25, 2010), *report and recommendation adopted*, 2010 WL 5056208 (E.D. La. Dec. 2, 2010) ("Clearly,

---

[39] R. Doc. 1-1 at 16.
[40] *Id.*

11

waiting almost five years before seeking the district attorney's files does not exemplify due diligence on [petitioner's] part."); *Heard v. Cain*, No. 06-3207, 2007 WL 763691, at *3 (E.D. La. Mar. 9, 2007) (finding petitioner's habeas application untimely and noting that, for § 2244(d)(1)(D), the point petitioner's convictions and sentences became final was the "point that petitioner could have obtained the district attorney's file through a public records request and discovered the factual predicate of his *Brady* claim through due diligence").

### III. Procedural Default

In their Opposition, Defendants also argue that Petitioner's habeas petition is procedurally defaulted in its entirety.[41] While the Court finds Petitioner's habeas petition untimely and Petitioner not entitled to either equitable or statutory tolling to remedy this fatal defect, the Court will, out of an abundance of caution, also address the issue of whether Petitioner's claims are procedurally defaulted as well.

"A federal court generally cannot review the merits of a state prisoner's habeas petition if the claims in the petition are procedurally defaulted." *Rocha v. Thaler*, 626 F.3d 815, 820 (5th Cir. 2010). "First, if the prisoner has never fairly presented that claim to the highest available state court, the claim is unexhausted." *Id.* Second, if the prisoner has presented the claim to the highest available state court but that court has dismissed the claim on a state-law procedural ground instead of deciding it on the merits, the claim has been decided on an independent and adequate state-law ground." *Id*.

The exhaustion requirement is satisfied only when a petitioner's claims have been properly presented to the state's highest court, either on direct review or on post-conviction attack. *Bufalino v. Reno,* 613 F.2d 568, 570 (5th Cir. 1980). In order to satisfy the exhaustion

---

[41] R. Doc. 5, p. 12.

12

requirement, the petitioner must have "fairly presented" the substance of his claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *Wilson v. Foti*, 832 F.2d 891, 894 (5th Cir. 1987).

"If a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal, the prisoner has procedurally defaulted his federal habeas claim." *Rocha*, 626 F.3d at 820, quoting *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir, 1997). "The state procedural rule must be 'both independent of the merits of the federal claim and an adequate basis for the court's decision.'" *Id.* at 820-21, quoting *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001). "A state procedural rule is an adequate basis for the court's decision only if it is 'strictly or regularly applied evenhandedly to the vast majority of similar claims.'" *Id.* at 821, quoting *Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995). If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a fundamental miscarriage of justice, *i.e.* the conviction of one who is actually innocent. *Id.* at 822-23.

Defendants argue that Petitioner presented federal habeas claims 1, 2, and 3 and post-conviction claims 1, 2, and 3 in his 2017 PCR application, which entire PCR application was denied as untimely under La. C. Cr. P. art. 930.8.[42] Per Defendants, because Article 930.8 is an independent and adequate state bar, Petitioner's entire petition is procedurally defaulted and

---

[42] R. Doc. 5, p. 13.

13

dismissible with prejudice.[43] The Fifth Circuit recognizes Article 930.8 as an adequate and independent bar to federal habeas review. *Laird v. Cain*, No. 16-755, 2017 WL 3650901, at *5 (W.D. La. Aug. 9, 2017), citing *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997). "[A] basic tenet of federal habeas review is that a federal court does not have license to question a state court's finding of procedural default, if based upon an adequate and independent state ground." *Id.*, quoting *Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir. 2000).

Here, the Commissioner, in her Recommendation to the trial court, concluded that Petitioner's application was "untimely" and recommended it be dismissed.[44] The trial court subsequently denied Petitioner's application "for the reasons discussed in the commissioner's recommendation."[45] Following a denial of writs by the First Circuit, the Louisiana Supreme Court confirmed this in its *per curiam* opinion, denying Petitioner's application because it "was not timely filed in the district court, and applicant fail[ed] to carry his burden to show that an exception applies," citing, *inter alia*, La. C. Cr. P. art. 930.8.[46] Thus, the Louisiana Supreme Court found Petitioner's PCR application procedurally defaulted on adequate and independent state ground.

The question, then, is whether Petitioner can show either that both cause for the default and prejudice that would result from failing to consider the claim on the merits, or that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* actual innocence.[47] *See Sumrell v. Miss.*, 403 F.App'x 959, 961 (5th Cir. 2010). As Petitioner does not allege actual

---

[43] *Id.*
[44] R. Doc. 6-8, p. 42.
[45] R. Doc. 6-8, p. 39.
[46] R. Doc. 7-10, p. 155; R. Doc. 7-1, p. 53.
[47] In his Reply, Petitioner primarily argues that an exception to procedural default is that "the state's procedures *inadequately* protect the petitioner's ability to assert their federal grounds in state court." R. Doc. 11, p. 6. However, as this is not the appropriate standard for determining whether procedural default may be excused, the Court does not address it further herein.

innocence in any of his briefing, the Court must determine whether Petitioner has demonstrated cause and prejudice, such that the Court may reach the merits of his Petition.

"Cause is defined as 'something external to the petitioner, something that cannot fairly be attributed to him' that impedes his efforts to comply with the [state] procedural rule." *Matchett v. Dretke*, 380 F.3d 844, 848 (5th Cir. 2004), quoting *Moore v. Roberts*, 83 F.3d 699, 704 (5th Cir. 1996). "A factor is external to the defense if it cannot fairly be attributed to the movant." *Mullis v. Lumpkin*, 47 F.4th 380, 390 (5th Cir. 2022), quoting *U.S. v. Vargas-Soto*, 35 F.4th 979, 993 (5th Cir. 2022). "If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice." *Matchett*, 380 F.3d at 849, citing *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997).

In his Reply, Petitioner argues that "the State is the cause for the delay."[48] Per Petitioner, the State had an affirmative obligation to disclose the missing law enforcement reports and Petitioner "should never have had to resort to filing Public Records Act requests in order to obtain the information."[49] Our sister court in the Eastern District of Louisiana addressed this precise issue. *Washington v. Cain*, No. 98-584, 2000 WL 863980 (E.D. La. Jun. 27, 2000). In *Washington*, the petitioner attempted to prove "cause" for his successive and untimely application seeking habeas relief by arguing that a supplemental police report, which the petitioner argued the prosecution failed to disclose to him and which he obtained through a request pursuant to the Louisiana Public Records Act, was newly discovery evidence. *Id.* at *1, 4. The Court rejected this argument, reasoning that because the petitioner "does not contend that access to that information was unavailable when he filed his first, timely application for state *habeas* review" and because he does not "attempt to explain his failure to request the information

---

[48] R. Doc. 11, p. 10.
[49] *Id.*

15

in the district attorney's file" until "several years after he filed his first application for state *habeas* relief and more than three years after his conviction became final," his contention lacked merit. *Id.* at *4. Because the claims were rejected on independent and adequate state grounds, the federal claim was barred under the procedural default doctrine.

Similarly, here, Petitioner did not submit his Public Records request until 2016, over a decade after his 2005 conviction and approximately eight years after he filed his first PCR application. Nowhere does he explain the reason for this delay. Moreover, he does not contend that access to the reports was unavailable when he filed his first PCR application in state court. Following the reasoning of the *Washington* court, the Court finds Petitioner has failed to establish "cause" for his procedural default. As no exception to procedural default here applies, the Court finds Petitioner's claims not only untimely, but also procedurally defaulted.[50]

## IV. Certificate of Appealability

Should Petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. §

---

[50] Out of an abundance of caution, the Court further notes that while Petitioner does not specifically argue his mental incompetency as "cause" excusing default, the Fifth Circuit has held that mental incompetency does not satisfy the "cause" requirement "because it is not a cause external to the petitioner." *Gonzales v. Davis*, 924 F.3d 236, 244 (5th Cir. 2019); *see also Mullis*, 47 F.4th at 390-91 (finding petitioner failed to show cause based on mental incompetency, recognizing that mental incompetency is not a cause external to petitioner and categorizing it as "binding precedent"). Per the Fifth Circuit, "[t]his court and others have held that mental impairments are not factors external to the petitioner's defense and do not excuse procedural default." *Gonzales*, 924 F.3d at 244 n. 4, citing *U.S. v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993); *Schneider v. McDaniel*, 674 F.3d 1144, 1154 (9th Cir. 2012). Given this precedent, Petitioner also would not be able prove cause based on mental illness or incompetency.

16

2253(c)(2). In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original). In the instant case, the Court finds that reasonable jurists would not debate the denial of Petitioner's § 2254 application based on its untimeliness or the correctness of the procedural ruling finding default. Accordingly, it is appropriate that, in the event Petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## V.    Conclusion and Recommendation

Accordingly,

**IT IS RECOMMENDED** that Petitioner's application for habeas corpus relief be denied, with prejudice, as untimely and procedurally defaulted.

**IT IS FURTHER RECOMMENDED** that, in the event Petitioner seeks to pursue an appeal, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on February 23, 2023.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**